BANK OF MARLINTON, *Assignee, etc. v.* L. P. MCLAUGHLIN *et al.*

(No. 9180)

Submitted September 4, 1941. Decided October 28, 1941.

*Richard F. Currence* and *Cyrus S. Kump*, for appellant.
*J. E. Buckley*, *S. H. Sharp* and *A. E. Cooper*, for appellees.

RILEY, JUDGE:

The Bank of Marlinton, as assignee and liquidating agent of the Bank of Hillsboro, filed its original and amended bills of complaint in the Circuit Court of Pocahontas County against L. P. McLaughlin, A. W. McLaughlin, J. K. Marshall, and Julia B. McLaughlin, praying that a certain deed dated May 18, 1931, executed by L. P. McLaughlin to his wife, Julia B. McLaughlin, be set aside as voluntary and fraudulent as to creditors, including plaintiff, existent at the time of said conveyance. From a decree denying the relief prayed for and dismissing its bills of complaint, plaintiff prosecutes this appeal.

A demurrer having been sustained by the circuit court to the original bill of complaint, plaintiff filed its amended bill. The cause was then remanded and matured at rules, and Mrs. McLaughlin demurred to the amended bill of complaint, assigning as the principal ground of demurrer laches of the plaintiff allegedly disclosed by the amended bill. The circuit court sustained this demurrer and certified its ruling here. On the certificate, this Court reversed the action of the circuit court, holding that the de-

murrer should have been overruled. *Bank of Marlinton v. McLaughlin,* 121 W. Va. 41, 1 S. E. (2d) 251. Mrs. McLaughlin and L. P. McLaughlin filed separate answers, and the First National Bank of Marlinton, on its petition, was made a party defendant to the suit and filed its answer.

In the circuit court Mrs. McLaughlin interposed three grounds of defense: (1) that she was a purchaser for value without notice; (2) that plaintiff was precluded because of laches; and (3) that she was entitled to be subrogated to the rights of the Greenbrier Joint Stock Land Bank, the Bank of Hillsboro, and the Bank of Marlinton, as assignee and liquidating agent of the Bank of Hillsboro, to the extent of the liens against the property in litigation, interest, cost of repairs, and taxes, which she claims to have paid.

In 1924, L. P. McLaughlin was the owner of the twenty-five acres of land in question. Prior to August 23, 1924, he and his wife, Julia B. McLaughlin, were indebted to the Bank of Hillsboro on several joint promissory notes, the latter being the accommodation maker. These notes were consolidated on August 23, 1924, in a note for $6,200.00. On August 15, 1926, L. P. McLaughlin, having obtained a loan of $4,000.00 from the Greenbrier Joint Stock Land Bank, executed his individual note in that amount payable to said bank, secured by a deed of trust on the twenty-five acres of land, in which Mrs. McLaughlin joined. On November 18, 1927, the $6,200.00 note was reduced to $4,400.00, by payment of $1,800.00 of the money obtained from the Greenbrier Joint Stock Land Bank loan. On December 19, 1927, the McLaughlins executed a deed of trust to secure the Bank of Hillsboro in the payment of the $4,400.00 note, subject, however, to the Greenbrier Joint Stock Land Bank's deed of trust, covering the twenty-five acres of land in litigation and an additional tract of 37.2 acres belonging to Mrs. McLaughlin, which had been conveyed to her in the partition of certain lands in Greenbrier County.

In June, 1926, the defendant, J. K. Marshall, then cashier of the Bank of Hillsboro, C. P. Brown, A. W. McLaughlin,

the McLaughlins' son, and L. P. McLaughlin, joined in the formation of a corporation for the purpose of selling "Maytag" washing machines in Roanoke, Virginia. To finance this venture, they jointly executed a note, dated November 15, 1926, and payable on demand to the Bank of Hillsboro in the sum of $2,500.00. About January, 1927, L. P. McLaughlin and his son sold their interests in the corporation to Marshall and Brown, the consideration being the assumption by the latter two of the liability on the note. From that time until the Bank of Hillsboro closed in 1930, the McLaughlins testified they heard nothing of the note.

About 1928, Mrs. McLaughlin agreed orally with her husband to pay the notes due the Greenbrier Joint Stock Land Bank and the Bank of Hillsboro, respectively, secured by the deeds of trust on the twenty-five acre tract of land, in consideration of his conveyance to her of said tract. Pursuant to this agreement, on October 17, 1928, she borrowed $2,000.00 from her sister, and applied the same on the $4,400.00 note of the Bank of Hillsboro, thus reducing it to $2,400.00. This note was carried by the Bank of Hillsboro until it was closed in November, 1930, and its assets taken over by plaintiff, as assignee and liquidating agent. Later this $2,400.00 note was paid by Mrs. McLaughlin, and the deed of trust securing it was released on May 11, 1936.

On April 20, 1931, an action was brought on the $2,500.00 Maytag note, and service had on all the makers, except Brown. L. P. McLaughlin, on May 18, 1931, executed the deed conveying to his wife the twenty-five acres in controversy. This deed was recorded a few days later. Thereafter, on October 19, 1931, judgment was obtained on the Maytag note in the amount of $2,767.17. No execution was ever issued thereon. On December 17, 1937, Mrs. McLaughlin borrowed $3,150.00 from the First National Bank of Marlinton, secured by deed of trust on the twenty-five acres involved in this suit, with which she paid the balance of the indebtedness owed to the Greenbrier Joint Stock Land Bank, and obtained a release of the latter's deed of trust. In addition to the $2,000.00

borrowed from her sister and the loan of $3,150.00 from the First National Bank, the record discloses that Mrs. McLaughlin also obtained and applied on the indebtedness assumed, $662.72, the amount of an additional loan obtained from that bank, $1,150.00 or $1,200.00 derived from her father's estate, and small sums of money otained from rooming and boarding children in her home.

The First National Bank's deed of trust was deposited for recordation in the county clerk's office of Pocahontas County on December 28, 1937. It was withdrawn from the clerk's office on January 19, 1938, and refiled on March 22d of the same year. At the time of its withdrawal it carried the following indorsement: "Deed of Trust. Admitted to record Dec. 28, 1937, at 2 o'clock P. M. in the Office of the Clerk of the County Court of Pocahontas Co., West Va., in Trust Deed Book No. 19 at page 478. (Signed) Moody Kincaid, Clerk". It later appeared that this paper was not actually spread upon any book provided for the recordation of deeds of trust; hence its refiling. The abstract of the Maytag judgment was recorded in the clerk's office on February 16, 1938. On February 23, 1938, this suit was brought and *pendente lite* on May 30, 1939, L. P. McLaughlin died. In addition to the principal indebtedness assumed, Mrs. McLaughlin paid interest thereon and certain claimed items of taxes accruing and cost of repairs incurred after the conveyance in question was made.

The circuit court dismissed the bills of complaint on the ground that Mrs. McLaughlin was a purchaser for value without notice of any fraud on her husband's part. Code, 40-1-1, provides in part that, "Every * * * conveyance * * * or transfer of * * * any estate, real or personal * * * given, with intent to delay, hinder, or defraud creditors * * * shall as to such creditors * * * be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor." Under this section Mrs. McLaughlin will not be entitled to prevail if she did not give a valuable consideration for

the conveyance in question, or if she had notice that her husband executed the deed with the fraudulent intent to evade the Maytag note. We say this because, when both the agreement and deed were made, Mr. McLaughlin was evidently insolvent, a fact of which his wife, living in the same house with him and assuming, as she did, the financial affairs of the family, must have been aware. If McLaughlin had no notice that the Maytag obligation was outstanding at the time the agreement was made, that fact was certainly brought to his attention before the execution of the deed by service of process in the action brought thereon by the plaintiff herein. Evidently he executed the deed with the fraudulent intent to defeat the Maytag claim. That of itself, however, does not render the conveyance vulnerable as against Mrs. McLaughlin.

In this jurisdiction a wife acting in good faith, free of fraudulent intent as to her husband's creditors, and without notice of such intent on his part, may take a transfer of property from him in consideration of the payment of all of his debts, or of specified debts, which he asserted and she believed were all he owed. *Casto* v. *Fry,* 33 W. Va. 449, 10 S. E. 799; *Wood* v. *Harmison,* 41 W. Va. 376, 23 S. E. 560.

Much evidence was adduced to the effect that neither Mrs. McLaughlin nor her husband had any notice that the Maytag note remained the latter's obligation. Both of the McLaughlins and their son, A. W. McLaughlin, so testified. Mrs. McLaughlin also testified that when she made the final payment on the Bank of Hillsboro indebtedness, and on the other occasion when she obtained a loan in the amount of $662.72 from the First National Bank of Marlinton in May, 1936, A. P. Edgar, attorney for the Bank of Marlinton, and attorney for the Bank of Hillsboro before its closing, both employments being of a limited nature, told her that the property in question would not be subject to any lien on account of the Maytag note. In this she is corroborated by her son and J. E. Sydenstricker, cashier of the First National Bank of Marlinton. If the evidence so far related stood alone, we would feel compelled to say that she was a purchaser without notice.

But this record discloses, without the slightest contradiction, that, under date of April 15, 1931, and before the deed in question was executed, she wrote Mr. Edgar a letter which shows that she knew that the Maytag note was held by the Bank of Hillsboro as an obligation of her husband. We therefore are of the opinion that, though the record does not show that she knew of the pending Maytag action or of her husband's fraudulent intent, it does establish that she had knowledge of such facts that she was charged with constructive notice of her husband's fraudulent intent and, therefore, was guilty of constructive fraud. In arriving at this conclusion, we have kept in mind that from the inception of the Maytag obligation until the bringing of this suit, there was, as between Mr. and Mrs. McLaughlin, no apparent change in the use and occupancy of the property which, of itself, is *prima facie* evidence of fraud. *Swope* v. *Wade,* 106 W. Va. 265, 145 S. E. 384; *Colston* v. *Miller,* 55 W. Va. 490, 47 S. E. 268; and that, under a long line of decisions of this Court, a conveyance of property by an insolvent husband to his wife during coverture is subject to close scrutiny, and will be sustained only upon clear proof that there was no intent to place the property beyond the reach of the husband's creditors. *First National Bank of Alderson* v. *McClung,* 121 W. Va. 36, 1 S. E. (2d) 249; *Hutchinson* v. *Walton,* 119 W. Va. 709, 196 S. E. 20; *Geary* v. *Salisbury,* 116 W. Va. 718, 182 S. E. 828; *Livey* v. *Winton,* 30 W. Va. 554, 4 S. E. 451; *Burt* v. *Timmons,* 29 W. Va. 441, 2 S. E. 780, 6 Am. St. Rep. 664; *Core* v. *Cunningham,* 27 W. Va. 206; *Maxwell* v. *Hanshaw,* 24 W. Va. 405.

It follows Mrs McLaughlin is not a purchaser for value without notice of her husband's intent, and is not entitled to prevail on that ground and, therefore, it becomes unnecessary for us to determine whether her assumption of her husband's indebtedness was an adequate and valuable consideration for the conveyance in question. On this point it is sufficient for us to say that, as disclosed by the record, the amounts paid under the agreement with her husband equalled, if not exceeded, the fair value of the property.

Mrs. McLaughlin, however, further says that if she is not a purchaser for value without notice, plaintiff is, nevertheless, precluded from relief in this suit because of laches. She contends that the Maytag note was held by the Bank of Hillsboro from the time made until the bank closed in 1930, and thereafter by the plaintiff, assignee and liquidating agent, until judgment was obtained thereon in October, 1931, and that meanwhile she altered her position by the payments hereinbefore recited which she made on her husband's indebtedness. But laches, as this Court has held in many cases, to bar relief in a court of equity, is not merely delay in the assertion of a claim. It is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right. *Bank of Marlinton* v. *McLaughlin, supra; Litz* v. *First Huntington National Bank,* 120 W. Va. 281, 197 S. E. 746; *Hall* v. *Mortgage Security Corp. of America,* 119 W. Va. 140, 192 S. E. 145, 111 A. L. R. 118; *Chitwood* v. *Collins,* 122 W. Va. 267, 8 S. E. (2d) 830; *Curl* v. *Vance,* 116 W. Va. 419, 181 S. E. 412; *Carter* v. *Price,* 85 W. Va. 744, 102 S. E. 685; *O'Neal* v. *Moore,* 78 W. Va. 296, 88 S. E. 1044; *Snyder* v. *Charleston & S. Bridge Co.,* 65 W. Va. 1, 63 S. E. 616, 131 Am. St. Rep. 947. Here, the record discloses that she paid a part of the indebtedness after her letter to Edgar, and did so notwithstanding she knew of her husband's outstanding obligation. The delay in the assertion of the Maytag claim evidently did not lull her into any sense of security on the basis of which she proceeded to, and did, satisfy said indebtedness. It did not cause her to alter her position, and therefore did not work to her disadvantage. It follows laches as a defense will not avail her.

Counsel for Mrs. McLaughlin, however, further asserts that if neither of the foregoing defenses is to avail her, she should be subrogated to the rights of the Greenbrier Joint Stock Land Bank, the Bank of Hillsboro, and the Bank of Marlinton, as assignee and liquidating agent. Though she was jointly liable on the note for $4,400.00 due to the Bank of Hillsboro, secured by the deed of

trust on the twenty-five acres and the tract of 37.2 acres belonging to her in Greenbrier County, she was only an accommodation maker, and was not liable, either as maker or indorser on the note for $4,000.00 which her husband owed the Greenbrier Joint Stock Land Bank, though she joined in the deed of trust securing the same. Notwithstanding she was charged with constructive notice of her husband's intent to evade the Maytag obligation, and, therefore, guilty of constructive fraud, we think that she has the right to be subrogated to the rights which the Greenbrier Joint Stock Land Bank and the Bank of Marlinton, as assignee and liquidating agent, could have asserted had their liens not been satisfied, to the extent of the money paid by her in satisfaction thereof, including interest thereon. This right, however, is subject to the lien of the First National Bank of Marlinton, which, based as it is on her direct obligation, is prior thereto, and does not extend to the monies derived by her in the use and occupancy of the property. A fraudulent grantee cannot equitably apply profits derived from the use of property obtained by fraud and have subrogation for the payment thereof on indebtedness assumed as consideration for the fraudulent transfer.

Where a conveyance is set aside as in fraud of grantor's creditors, the grantee therein, guilty of constructive fraud only, who has discharged liens against the property, existing at the time of the conveyance, will be subrogated to the benefit of said liens. *Sleeth* v. *Taylor,* 82 W. Va. 139, pt. 8, Syl., 95 S. E. 597, and *Burton* v. *Gibson,* 32 W. Va. 406, 9 S. E. 255 On this point the decisions of the American courts are almost, if not entirely, unanimous. For a general collation of authorities, see notes, *People's Savings & Dime Bank & Trust Co.* v. *Scott,* 303 Pa. 294, 154 A. 489, 79 A. L. R. 129, 138, and *Sheridan* v. *McCormick,* 39 N. D. 641, 168 N. W. 59, 8 A. L. R. 523, 535. And the fact that the fraudulent grantee is the fraudulent grantor's wife does not prevent the application of the rule. *Burton* v. *Gibson, supra.* To the effect that the general rule is contrariwise where the grantee is guilty of actual fraud, see also said notes. However, in *Kimble* v. *Wotring,* 48

W. Va. 412, pt. 3, syl., opinion 423, 37 S. E. 606, a case in which the grantee actually participated in the grantor's fraud, this Court held: "Where a conveyance is set aside as fraudulent as to creditors, the fraudulent vendee in such conveyance, who has paid a vendor's lien on the land conveyed as part of the consideration for the fraudulent purchase, will be subrogated to the rights of the original holder of the vendor's lien against the land." Analagous: *Harvey* v. *Nutter,* 66 W. Va. 208, pt. 3, syl., opinion 216, 66 S. E. 363; *James* v. *Piggott,* 70 W. Va. 435, pt. 7, syl., opinion 441, 74 S. E. 667; *National Life Ins. Co.* v. *Hanna,* 122 W. Va. 36, 7 S. E. (2d) 52; see generally, 19 Am. Jur., Equity, Sec. 463, notes 15, 16, 17, 18; Id. Sec. 465, note 15. From the foregoing authorities it appears the reason for allowing a fraudulent grantee to be subrogated in a case such as this lies in the rule that he who seeks equity must do equity. Here Mrs. McLaughlin did not come into a court of equity in the first instance; she was brought in by plaintiff's suit. Her action in satisfying the liens against the property was no detriment to plaintiff and if plaintiff is entitled to have the deed in question set aside and the right to subrogation withheld, it will become unjustly and inequitably enriched at the expense of another.

Subrogation is purely of equitable origin; it has as its object "real essential justice." *Hawker* v. *Moore,* 40 W. Va. 49, 50, 51, 20 S. E. 848, 849. It is, as defined by this Court in *Bassett* v. *Streight,* 78 W. Va. 262 pt. 1, syl., 88 S. E. 848, "that one who has the right to pay and does pay a debt which ought to have been paid by another, is entitled to exercise all the remedies which the creditor possessed against that other." Because the indebtedness secured by the liens discharged by Mrs. McLaughlin under the agreement was Mr. McLaughlin's, this case comes fully within this definition. On the question of subrogation, it seems to us the justice of this case lies with her. Of course, subrogation will never be permitted where it causes injustice or works to the prejudice of third parties. *Buskirk* v. *State-Planters' Bank & Trust Co.,* 113 W. Va. 764, 169 S. E. 738; *McNeil* v. *Miller,* 29 W. Va. 480, 2

S. E. 335; *McClaskey & Crim* v. *O'Brien,* 16 W. Va. 791. Such is not the case here.

Though entitled to subrogation to the extent heretofore suggested, Mrs. McLaughlin's right, however, does not include reimbursement for taxes and costs of repairs. She agreed to assume only the two deeds of trust against the property, and surely she should not equitably be entitled to reimbursement for taxes accruing and costs of repairs incurred during the occupancy of the property where, as here, plaintiff does not seek an accounting for rents and profits. Moreover, subrogation, as suggested, extends only to the payment of debts which should have been paid by another.

This case, on the question of subrogation, should be distinguished from those involving a conveyance fraudulent on its face, as *Livesay's Ex'r* v. *Beard,* 22 W. Va. 585, and *Shattuck & Jackson* v. *Knight & Bros.,* 25 W. Va. 590, and a conveyance not fraudulent on its face in consideration of antecedent debts due from grantor to grantee, as *Kanawha Valley Bank* v. *Wilson,* 25 W. Va. 242, and *Webb* v. *Ingham,* 29 W. Va. 389, 1 S. E. 816. We simply hold here that where a conveyance from a husband to his wife is set aside as in fraud of the husband's creditors, and the wife, from funds other than those derived from the use of the property, has satisfied liens on the property conveyed, as a consideration for the fraudulent conveyance, and no injustice will be done to third parties, she will be subrogated to the rights of the original holders of said liens.

The deed of trust of the First National Bank is a lien not only prior to Mrs. McLaughlin's right to subrogation, but prior also to the Maytag judgment. The failure of the county clerk to transcribe it on the official rolls when first filed did not impair its priority. In this jurisdiction the filing of a recordable deed or deed of trust in the county clerk's office for the purpose of having it recorded is constructive notice under Code, 40-1-8, notwithstanding the misprision of the clerk in failing to spread it upon the records of his office. In *Wethered* v. *Conrad,* 73 W. Va. 551, 80 S. E. 953, pt. 3, syl., this Court held: "A grantee who deposits his deed with the clerk of the county court

for recordation is thereby protected under the recording act. Even though the record may be thereafter destroyed, it does not cease to be notice to those intended to be thereby affected." See also *Benson* v. *Wood Motor Parts Corp.*, 115 W. Va. 200, 174 S. E. 895; *Troy Wagon Co.* v. *Hutton*, 53 W. Va. 154, 44 S. E. 135; *Fouse* v. *Gilfillan*, 45 W. Va. 213, 32 S. E. 178; *Calwell's Ex'r* v. *Prindle's Adm'r*, 19 W. Va. 604; *Beverly* v. *Ellis & Allan*, 1 Rand. 102; and note to *General Motors Acceptance Corporation* v. *Brackett & Shaw Co.*, 84 N. H. 348, 150 A. 739, 70 A. L. R. 591, 595.

For the foregoing reasons the decree of the circuit court is reversed and this cause remanded for further proceedings in accordance with the principles herein set forth.

*Reversed and remanded.*

Fox, Judge, concurring:

While I concur in the general result, and in the points of law announced in the syllabus, I wish to be understood as believing that Julia B. McLaughlin is entitled to subrogation for amounts paid by her on the Bank of Hillsboro note of $2,400.00, and the debt of the Greenbrier Joint Stock Land Bank, to the extent only that she has made payments from her separate estate. She testified that of the amount so paid, she received approximately $1,200.00 from her father's estate. This was, of course, her separate estate, and, if applied to her husband's debts, in the circumstances developed by the record, she is entitled to subrogation therefor. As I read the record, there is no showing of other payments made by her from her separate estate, and the burden of establishing this essential fact rested on her. The record does show that money was earned by rooming and boarding students, but this was money earned from the use of the property which we have held was fraudulently conveyed. In equity, the property from which these earnings were derived, was at all times that of L. P. McLaughlin, and, therefore, earnings therefrom, applied on his debts, should not at this time be decreed to Julia B. McLaughlin, under

the theory of subrogation, to the prejudice of L. P. McLaughlin's creditors. If there had been no conveyance, and the property involved had been used in the manner it was used subsequent to the date of the conveyance made, who would say that Julia B. McLaughlin would be entitled to any part thereof? The conveyance to her, being ineffective in equity, she stands in exactly the same position as she would have stood had no conveyance been made.

I do not think the $2,000.00 paid by Julia B. McLaughlin in 1928, on the $4,400.00 note to the Bank of Hillsboro bears in any way on the question before us. That payment, in the absence of clear showing to the contrary, while made out of her separate estate, is presumed to have been a gift to her husband, and the mere parol testimony of the husband and wife of a private understanding that it was intended as a loan and not a gift is insufficient to rebut the presumption of a gift. *Zinn* v. *Law,* 32 W. Va. 447, 9 S. E. 871; *Horner* v. *Huffman,* 52 W. Va. 40, 43 S. E. 132. In all cases where money is advanced by one spouse to the other, the presumption of a gift arises, which can only be rebutted by full, clear and definite proof that it was otherwise intended. *Bank* v. *Atkinson,* 32 W. Va. 203, 9 S. E. 175; *American Finance Co.* v. *Leedy,* 112 W. Va. 17, 163 S. E. 626; *First National Bank of Alderson* v. *McClung,* 121 W. Va. 36, 1 S. E. (2d) 249.

I am not certain that the opinion written by Judge Riley for the court conflicts, or is intended to conflict, with the views I have expressed in this note; but inasmuch as the question of the amount to which Julia B. McLaughlin may be entitled, under the theory of subrogation announced by the Court, will have to be hereafter determined, I have endeavored to make my own views clear as to the principles which should govern in decreeing what amount, if any, may be due her.